FILED
2024 May-20 PM 01:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **INTERGRAPH CORPORATION d/b/a HEXAGON ASSET LIFECYCLE INTELLIGENCE DIVISION,** | ) | |
| **Plaintiff,** | ) | **Case No. ____________________** |
| **v.** | ) | |
| **KEVIN PRICE,** | ) | |
| **Defendant.** | ) | |

**VERIFIED COMPLAINT**

Plaintiff Intergraph Corporation, doing business as Hexagon Asset Lifecycle Intelligence Division ("Plaintiff" or "Hexagon ALI"), alleges the following against Defendant Kevin Price ("Price"):

**PARTIES**

1. Plaintiff is a corporation formed under the laws of the State of Delaware, with its principal place of business located in Madison County, Alabama.

2. Price is an individual resident of Greenville, South Carolina.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, as complete diversity exists and the amount in controversy exceeds $75,000. The Court also has jurisdiction under 28 U.S.C. § 1331, as Count I arises under federal law.

4. Venue is proper in the Northern District of Alabama, Northeastern Division, pursuant to agreement of the parties. Through his execution of the Proprietary Information Agreement described below, Price consented to venue in any state or federal court located in Madison County, Alabama, for any action related to the agreement or his employment relationship with Hexagon ALI.

## STATEMENT OF FACTS

5. Hexagon ALI is responsible for Hexagon's Enterprise Asset Management (EAM) business. Hexagon EAM is an industry-leading asset management software solution.

6. Hexagon ALI purchased the EAM business from Infor (US), LLC and its affiliates in October 2021.

7. Price joined Hexagon ALI as part of the Infor transaction. He has over 26 years of experience with the product line that currently makes up Hexagon's EAM portfolio. Prior to Hexagon ALI's acquisition of the EAM business from Infor, Price served as Product Director for Infor's EAM Solution Portfolio for approximately 8 years. He also served as Infor's EAM Global Strategist for 4 years.

8. On August 27, 2021, Price executed an offer of employment from Hexagon ALI. The offer of employment was expressly contingent upon (1) Price's execution of the offer letter; (2) Price's execution of the Proprietary Information and Inventions Agreement (the "Proprietary Information Agreement") attached to the

offer letter; (3) the closing of the Infor purchase; and (4) Price's continued employment with Infor as of the closing date of the Infor purchase.

9. Price simultaneously executed the Proprietary Information Agreement and the offer letter. Both the offer of employment and the attached Proprietary Information Agreement became effective on October 1, 2021, the closing date of the Infor purchase.

10. In the Proprietary Information Agreement, Price agreed to hold all "Proprietary Information" developed, created, discovered by, or otherwise known by or conveyed to Hexagon ALI in the strictest confidence. Price agreed not to disclose such Proprietary Information during or after the term of his employment with Hexagon ALI, except as required or permitted in connection with his work for Hexagon ALI.

11. The Proprietary Information Agreement defines "Proprietary Information" to include: trade secrets, customer lists, Work Product (as defined in the Agreement), designs, configurations, toolings, documentation, schematics, source code, object code, computer programs, processes, databases, algorithms, flow charts, formulae, circuits, contracts, mechanisms, research, manufactures, improvements, assembly practices, installations, marketing, forecasts, pricing, recruiting, customers, salaries, wages, duties, contact information, qualifications,

performance levels and/or cost or other financial data concerning any of the foregoing or Hexagon ALI's operations or planned operations generally.

12. Through the Proprietary Information Agreement, Price also agreed not to remove "Company Property" from the business premises, except as required in the normal course of performing his duties. Price agreed to return all Company Property immediately upon termination of his employment with Hexagon ALI. The agreement defines "Company Property" to include papers, records, data, notes, code, recordings, drawings, files, documents, and other materials or media related to Hexagon ALI's business.

13. Price also agreed, through the Proprietary Information Agreement, for a period of twelve months following termination of his employment with Hexagon ALI, to refrain from engaging, directly or indirectly, in any employment, business, or activity that is in any way competitive with the business or proposed business of Hexagon ALI and from assisting any other person or organization in competing with the company.

14. Price further agreed, through the Proprietary Information Agreement, for a period of twelve months following termination of his employment, to refrain from soliciting, directly or indirectly, Hexagon ALI employees.

15. The Proprietary Information Agreement is governed by Alabama law.

16. On October 4, 2021, Price acknowledged and agreed to Hexagon ALI's employment policies and procedures, including its Acceptable Use Policy and Code of Business Conduct and Ethics.

17. Under the Acceptable Use Policy, Price agreed not to copy, without prior authorization, Hexagon ALI's proprietary information, trade secrets, or intellectual property onto portable media (e.g., thumb drives, hard drives, and the like), cloud-based storage other than as sanctioned by Hexagon, or personal devices. The policy requires IT department authorization to transfer large amounts of information, otherwise requires Price to safeguard Hexagon ALI's information, and expressly prohibits theft or unauthorized distribution of confidential, proprietary, or trade secret information or other intellectual property belonging to Hexagon ALI.

18. Similarly, the Code of Business Conduct and Ethics imposed upon Price a duty to protect Hexagon ALI's confidential information.

19. From October 2021 to his resignation in April 2024, Price served as Vice President of Portfolio Strategy and Enablement for Hexagon EAM. For the past 2 years, he was responsible for product and market strategy at Hexagon EAM as the Strategic Advisor of Portfolio Strategy and Enablement.

20. Price submitted his letter of resignation to Hexagon ALI on April 16, resigning effective April 30, 2024.

21. Price participated in an exit interview with Hexagon ALI's human resources department on April 25, 2024. During the interview, Hexagon ALI reminded Price of his Proprietary Information Agreement, shared the agreement with him, and read him through pertinent terms.

22. Throughout Price's offboarding process with Hexagon ALI, he denied leaving for another role and failed to disclose that he would be joining a competitor.

23. "IFS," which upon information and belief, operates in North America through IFS North America, Inc. and/or Industrial and Financial Systems Inc., is Hexagon ALI's direct competitor in the global EAM market.

24. On May 7, 2024, Hexagon ALI first learned through a press release that Price had joined IFS as the company's Global Head of Enterprise Asset Management (EAM). IFS North America, Inc. and Industrial and Financial Systems Inc. (collectively "IFS") is Hexagon ALI's direct competitor in the global EAM market.

25. The IFS press release expressly touts IFS's competitive advantage over Hexagon: "The demand for IFS.ai and market momentum for Asset-centric business choosing IFS over SAP, IBM Maximo and Hexagon has seen Gartner name IFS as the #1 vendor for EAM market share."

26. Upon investigation after learning Price had left Hexagon ALI to join a direct competitor, Hexagon ALI learned that, beginning mid-day on April 29, and

concluding early in the morning of April 30, 2024, Price downloaded 35,716 files from Hexagon ALI's document storage system to an external device.

27. Price's data dump included tens of thousands of files saved within a folder labeled "EAM Product Management." All of this information is confidential and proprietary to Hexagon ALI.

28. Among the files Price took were: (i) compilations of Hexagon EAM customers; (ii) internal business plans containing marketing strategy, pipeline information, and customer lists; (iii) compilations of internal merger and acquisition strategies; (iv) Hexagon ALI's responses to potential customer RFPs; and (v) current, ongoing draft marketing strategies. All of this information is highly proprietary to Hexagon ALI, and its disclosure to outside parties—and particularly competitors—would gravely harm Hexagon ALI's business interests.

29. Price had no legitimate business purpose for this mass export of business records. Price did not receive authorization or coordinate the export through Hexagon ALI's IT department. The only plausible explanation is Price's theft and misappropriation of Hexagon ALI's competitive data.

**COUNT I – MISAPPROPRIATION OF TRADE SECRETS, 18 U.S.C. § 1836**

30. Hexagon ALI has created and/or possesses confidential financial, business, scientific, technical, economic, and/or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes,

methods, techniques, processes, procedures, programs, and codes, and takes reasonable measures to keep such information secret, including but not limited to, through its Acceptable Use Policy, employee confidentiality agreements, and use of IT security measures.

31. This confidential information derives significant independent economic value from not being generally known to or readily ascertainable by others, including competitors in the EAM industry.

32. By downloading and taking Hexagon ALI's trade secret information in violation of his duty to Hexagon ALI to maintain its secrecy, in violation of the Acceptable Use Policy and Proprietary Information Agreement, and without Hexagon ALI's permission, Price misappropriated the trade secret information.

33. Price misappropriated Hexagon ALI's trade secret information willfully and maliciously, with the intent to take the information to a competitor for his personal gain.

34. Hexagon ALI has been damaged as a result.

**COUNT II – BREACH OF CONTRACT**

35. Price entered into a valid, enforceable contract with Hexagon ALI, under which he has the confidentiality and non-compete obligations described above in Paragraphs 10 – 13.

36. Additionally, Price agreed to comply with Hexagon ALI's Acceptable Use Policy and Code of Business Conduct and Ethics, which placed additional restrictions on Price's access to and use of Hexagon ALI's confidential information, as described in Paragraphs 17 – 18, above.

37. Hexagon ALI has complied with all material obligations under the agreements.

38. Price breached his Proprietary Information Agreement and Hexagon ALI's policies and procedures by downloading and taking Hexagon ALI's confidential, proprietary, and trade secret information without authorization, as described in Paragraphs 26 – 29, above.

39. Moreover, Price is in breach of his non-compete obligations in the Proprietary Information Agreement through his employment with IFS and his sharing Hexagon ALI's confidential information with IFS.

40. Hexagon ALI has been damaged as a result.

**COUNT III – PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

41. Price's continued possession and use of the surreptitiously downloaded files from Hexagon ALI threatens immediate and irreparable harm to Hexagon ALI's business interests and competitive advantage in the EAM market. Hexagon ALI has no adequate remedy at law to redress this harm.

42. Price's employment with IFS, in direct competition with Hexagon ALI, also threatens immediate and irreparable harm to Hexagon ALI's business interests and competitive advantage in the EAM market. Hexagon ALI has no adequate remedy at law to redress this harm.

43. Price expressly agreed in the Proprietary Inventions Agreement as follows: "Because my services are personal and unique and because I may have access to Proprietary Information, Third Party Information and Company Property, [Hexagon ALI] shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief."

44. Any hardship imposed upon Price through injunctive relief does not unreasonably outweigh the benefit to Hexagon ALI in protecting its business interests here.

WHEREFORE, the above premises considered, Hexagon ALI requests:

(i) Compensatory and punitive damages, in an amount to be determined by the trier of fact;

(ii) An award of its costs and attorneys' fees;

(iii) Preliminary and permanent injunctive relief preventing Price from maintaining and/or using Hexagon ALI's proprietary information, and requiring Price to delete and/or return all Hexagon ALI proprietary information within his possession;

(iv) Preliminary and permanent injunctive relief preventing Price from further violation of his non-compete obligations; and

(v) Any and all such other relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands trial by struck jury.

## VERIFICATION

STATE OF ALABAMA )
)
COUNTY OF MADISON )

Before me, the undersigned Notary Public in and for said County and State, appeared Jennifer G Kaplan, in her capacity as Senior Vice President Global Human Resources, who after being duly sworn, deposes and says thatshe read the foregoing Verified Complaint and that the facts contained therein are true and correct to the best of her knowledge.

Jennifer G Kaplan
Name

Given under my hand and seal on this 17th day of May, 2024.

Alexandra Pearce
NOTARY PUBLIC

My commission expires: 02/11/2025

ALEXANDRA PEARCE NOTARY PUBLIC ALABAMA STATE AT LARGE

Respectfully submitted this 17th day of May, 2024.

*s/ G. Bartley Loftin, III*
G. Bartley Loftin, III

**OF COUNSEL:**
Douglas B. Hargett
Angela M. Schaefer
Loftin Holt Hall & Hargett LLP
200 Clinton Ave. W, Suite 405
Huntsville, Alabama 35801
bartley@loftinholt.com
douglas@loftinholt.com
angela@loftinholt.com
256-929-7997

**TO BE SERVED VIA CERTIFIED U.S. MAIL:**
Kevin Price
208 Inn Circle
Fountain Inn, SC 29644